UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WOODROW FLEMMING,

                                        Plaintiff,

        v.                                                          9:13-CV-1448
                                                                    (GLS/RFT)

PAUL M. DUVALL et al.,

                                        Defendants.

_____

APPEARANCES:

WOODROW FLEMMING
Plaintiff, pro se
P.O. Box 146
New York, NY 10039

GARY L. SHARPE
Chief United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

        Currently before the Court, is a pro se civil rights action filed by plaintiff Woodrow

Flemming pursuant to 42 U.S.C. § 1983 ("Section 1983") against several state employees.[1]

Dkt. No. 1 ("Compl.").  By Decision and Order filed on July 11, 2014, plaintiff was denied

leave to proceed in forma pauperis with this action pursuant to 28 U.S.C. § 1915(g).[2]  Dkt.

No. 5 (the "July Order").  After receiving an extension of time to do so, plaintiff paid the full

_____

        [1] Plaintiff filed this action while in the custody of the New York Department of Corrections and
Community Supervision ("DOCCS").  *See* Dkt. No. 1 at 1.  Plaintiff was released from DOCCS
custody on March 21, 2014.  *See* http://nysdoccslookup.doccs.ny.gov/ (information for Woodrow
Flemming, DIN 03-A-5259) (last visited April 1, 2015).

        [2] Plaintiff is a frequent litigator in federal court, having filed over fifty actions in courts in this Circuit since
1997.  *See* U.S. Party/Case Index < http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl > (last visited March 31,
2015).  The three-strikes rule of 28 U.S.C. §§ 1915(g) has been repeatedly enforced against plaintiff in this
District.  *See* Dkt. No. 5.

statutory filing fee.

## II.    Initial Screening

Because plaintiff seeks relief from a governmental entity or an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915A.  Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

2

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## III.    Summary of the Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a

procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

In his complaint, plaintiff asserts numerous claims against thirty-three individual defendants arising out of his confinement at Upstate Correctional Facility ("Upstate C.F."). The following facts are set forth as they appear in the complaint.[3]  On November 20, 2010, at approximately 10:45 A.M., defendant C.O. James P. Healy ("Healy") appeared at plaintiff's cell and told plaintiff that he was being moved due to a "PIMS level drop."[4]  *See* Compl. at 11, 15; *see also* Dkt. No. 1-1 at 5.   Plaintiff told Healy that he had moved only three weeks earlier and asked Healy to call the sergeant.  *See* Compl. at 11, 21.  Defendant C.O. Charles Champage ("Champage") and defendant Sgt. Paul M. Duvall ("Duvall") arrived and told plaintiff to pack for the move.  *See id.*  Plaintiff was told to put his hands in the hatch to be handcuffed.  *See id.* at 21.  Healy and Champage escorted plaintiff to his new cell.  *See id.* at 22.  When they arrived at the new cell, plaintiff asked for his property and was told to enter the cell or he would not receive his property.  *See* Compl. at 22.  When Duvall arrived,

---

[3] Plaintiff's handwritten complaint is difficult to decipher.  In light of plaintiff's pro se status, the court has used its best efforts to read the entire complaint to ascertain the facts alleged and to identify the claims asserted. Plaintiff is advised that future submissions must be legible in order for his claims to be properly addressed.  In addition, plaintiff annexed 66 pages of exhibits to the complaint.  *See* Dkt. No. 1-1.  To the extent that these documents are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[4] PIMS is an abbreviation for "Progressive Inmate Movement System."  *See* www.docs.ny.gov (last visited April 1, 2015).

plaintiff tried to discuss the matter with him, but Duvall refused to listen.  *See id.*  Duvall told Healy and Champage to "use force" to "put the plaintiff in the cell."  *See id.*  Healy and Champage "assaulted" plaintiff.  *See id.* at 23.  Defendants C.O Moulton ("Moulton") and C.O. Ashline ("Ashline") confiscated and searched plaintiff's legal work.  *See* Compl. at 23.  Two days later, defendant C.O. Tuper ("Tuper") returned plaintiff's legal property after he searched plaintiff's property.  *See id.* at 24.

Plaintiff undressed for photographs but his injuries were not recorded and he was denied medical treatment from defendant Nancy Smith ("Smith") and Richard Adam ("Adam").[5]  *See id.* at 24, 44.

On the same day, Healy and Champage issued an Inmate Misbehavior Report charging plaintiff with violating a direct order, violent conduct, movement violations and destruction of property.  *See* Dkt. No. 1-1 at 12.  On December 7, 2010, a disciplinary hearing was conducted by defendant Don Haug ("Haug").  *See id.* at 13.  At the conclusion of the hearing, plaintiff was found guilty of the charges described in the misbehavior report.  *See id.*  As a penalty, plaintiff was placed on a seven-day, restricted diet and directed to pay $75.00 for a broken cell screen.  *See id.*

Unrelated to the November 2010 incident, plaintiff was previously sentenced to fifteen years in the Special Housing Unit ("SHU").  *See* Compl. at 40.  At the time the complaint was filed, plaintiff had served five years of the sentence in the SHU without his walking cane, a

---

[5] The documents annexed to plaintiff's complaint indicate that plaintiff was examined by RN Heath Baker on November 26, 2010 at 10:50 A.M.  *See* Dkt. No. 1-1 at 9.  RN Baker is not a named defendant herein.

rule book, or his medical machine.[6]  *See id.* at 25.  While confined to the SHU, plaintiff

remained in his cell for twenty-three hours a day, seven days a week.  *See id.* at 36.  Plaintiff

was forced to endure yelling by other inmates and was denied access to exercise equipment.

*See id.*

 Construed liberally, the complaint contains the following claims: (1) Eighth

Amendment excessive force claims against Healy, Champage and Duvall; (2) Eighth

Amendment deliberate indifference to medical needs claims against Healy, Champage,

Duvall, Adam and Smith; (3) Fourth Amendment claims against Ashline, Moulton and Tuper

related to the search of plaintiff's legal property; (4) Fourteenth Amendment due process

claims related to the November 2010 cell move and December 2010 disciplinary hearing; (5)

Eighth Amendment conditions of confinement claim; and (6) supervisory claims against Brian

Fischer ("Fischer"), Donald Selsky ("Selsky"), Anthony J. Annucci ("Annucci"), David Rock

("Rock"), Donald Uhler ("Uhler"), Theodore Zerniak ("Zerniak"), Donald Quinn ("D. Quinn"),

Gerald Otis ("Otis") and Michael Lira ("Lira").

## IV. Analysis

## A. Eighth Amendment - Excessive Force

 The Eighth Amendment's prohibition against cruel and unusual punishment

encompasses the use of excessive force against an inmate, who must prove two

components:  (1) subjectively, that the defendant acted wantonly and in bad faith, and (2)

objectively, that the defendant's actions violated "contemporary standards of decency."

---

[6] The complaint lacks any facts indicating why or when plaintiff began serving his SHU sentence. Plaintiff does not allege, and the exhibits do not support, that the confinement was part of the penalty imposed after the December 2010 hearing.

6

*Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  In this regard, while "a *de minimis* use of force

will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d

Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment

violation per se because in such an instance "contemporary standards of decency are always

violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a

claim of excessive force is "whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7

(citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d

1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam)

("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial

inquiry in excessive force cases—not whether a certain quantum of injury was sustained.").

"Accordingly, when considering the subjective element of the governing Eighth Amendment

test, a court must be mindful that the absence of serious injury, though relevant, does not

necessarily negate a finding of wantonness." *Wynter v. Ramey,* No. 11-CV-0257

(DNH/DEP), 2013 WL 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Here, plaintiff's vague allegations against Duvall, Healy and Champage are wholly

inadequate to plausibly suggest that plaintiff was the victim of excessive force.  Plaintiff

summarily states that he was "assaulted," but fails to describe the use of force in any

manner.  Moreover, the exhibits annexed to plaintiff's complaint contradict his allegation that

the use of force was excessive or wanton.  *See* Dkt. No. 1-1 at 4, 5.  The documents suggest

that a "body hold" was utilized when plaintiff refused to enter his cell.  *See id.* at 5.  Further

7

fatal to plaintiff's claim is his failure to allege that he sustained any injury, even a temporary injury, as a result of any of the alleged incident.  As a result, plaintiff's Eighth Amendment excessive force claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim.

**B.     Eighth Amendment - Deliberate Indifference**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Deliberate indifference has two necessary components, one objective and the other subjective.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The objective component of an Eighth Amendment deliberate indifference claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553) (internal quotation marks omitted).  Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553).  "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm."  *Hathaway*, 37 F.3d at 66.  To assert a claim for deliberate indifference, an inmate must

allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U .S. at 835.

### 1.    Walking Cane

Plaintiff claims that Healy, Champage, and Duvall were deliberately indifferent to his serious medical needs when they forced plaintiff to walk from his cell without his walking cane. *See* Compl. at 18.  Plaintiff's allegations are wholly insufficient to suggest an Eighth Amendment deliberate indifference claim.  The complaint lacks any facts establishing what serious medical need required plaintiff to utilize a cane.  Moreover, even assuming that defendants were aware that plaintiff was required to walk with a cane, defendants' conduct, at best, amounts to negligence. *See Flemming v. Smith*, No. 13-CV-0816 (DNH/RFT), 2014 WL 4829526, at *4 (N.D.N.Y. Sept. 29, 2014).

### 2.    Injuries and Medical Treatment Related to November 2010 Incident

Plaintiff fails to plead facts to plausibly suggest that he suffered from a serious medical need as a result of the November 2010 incident.  Indeed, plaintiff does not describe what injuries he allegedly sustained as a result of the alleged incident.  Moreover, even assuming plaintiff suffered from a serious medical condition, the complaint lacks any facts suggesting that plaintiff was denied any medical treatment.  Indeed, plaintiff was examined at 10:50 .M., on the day of the incident, by RN Baker who noted, "inmate refused to strip for examination." *See* Dkt. No. 1-1 at 9.  Baker also noted, "states both arms hurt, both arms have full range of

motion and strength - no obvious injury found at this time." *See id.*  Plaintiff's conclusory claims of "deliberate indifference," without more, are insufficient to plausibly state an Eighth Amendment violation.  Plaintiff's Eighth Amendment deliberate indifference claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim.

**C.    Fourth Amendment**

Plaintiff claims that Ashline, Moulton, and Tuper violated the Fourth Amendment when they confiscated and searched plaintiff's legal property.  *See* Compl. at 23-24.   "The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  *Willis v. Artuz*, 301 F.3d 65, 67 (2d Cir. 2002) (quoting *Hudson v. Palmer*, 468 U.S. 517 (1984)).  The seizure or search of an inmate's legal property does not constitute a Fourth Amendment violation.  *Tindell v. Beard*, 351 F. App'x 591, 594 (3d Cir. 2009).  Plaintiff's Fourth Amendment claims are dismissed for failure to state a cause of action under section 1983.

**D.    Due Process Claims**

Plaintiff alleges that his due process rights were violated when he was moved from his cell and his PIMS level was decreased from three to one.  *See* Compl. at 16.  Plaintiff also claims that his due process rights were violated at his December 2010 disciplinary proceeding.  *See* Compl. at 35, 40.  To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both: (1) possessed an actual liberty interest; and (2) was deprived of that interest without being afforded sufficient process.  *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.

1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996). "Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ortiz,* 380 F.3d at 654 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)); *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective

confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).

### 1.    Cell Move and PIMS Level

Plaintiff has failed to establish that his move from one cell to another cell deprived him of a liberty interest. Plaintiff has not pleaded any facts suggesting that the transfer or change "presented a dramatic departure from basic conditions." Plaintiff does not have a liberty in the location of his confinement. *See Harris v. Avant*, Civil Action No. 10-cv-00027-PAB-CBS, 2012 WL 1079318, at *3 (D. Colo. March 29, 2012) (providing that the plaintiff's claim that the defendants forced her to move from one cell to another, failed to state relief under the due process clause) (citing *Overturf v. Massie*, 385 F.3d 1276, 1279 (10th Cir. 2004)); *see also DeMaio v. Mann*, 877 F.Supp. 89, 93 n.6 (N.D.N.Y. 1995) (holding that the plaintiff's movement from one cell to another identical cell "implicated no liberty interest"). Further, plaintiff does not have a liberty interest in a PIMS level. *See Burnett v. Jones*, 437 F. A'ppx 736, 746 (10th Cir. 2011) (explaining that a downgrade in security level "does not inevitably effect the duration of [a] sentence"); *see also Callender v. State*, 38 Misc. 3d 651, 658 (N.Y. Ct. Cl. 2012) (citing *Sandin*, 515 U.S. at 486).

### 2.    December 2010 Disciplinary Hearing

### a.    Liberty Interest

Plaintiff alleges that, as a result of the improper disciplinary hearing, he was placed on a seven-day, nutritionally inadequate, restricted diet and unfairly directed to pay $75.00 in

restitution.  *See* Compl. at 33, 35.  The Second Circuit, and this Court specifically, have

found that a seven-day restricted diet is insufficient to establish an atypical and significant

hardship.  *See McEachin v. McGuinnis*, 357 F.3d 197, 199–201 (2d Cir.2004) (granting

dismissal of the inmate's due process claim because there was no atypical and significant

hardship suffered by the inmate as a consequence of the disciplinary disposition of a week's

long restricted diet); *Beckford v. Portuondo*, 151 F.Supp.2d 204, 219 (N.D.N.Y.2001) (holding

that "[i]n light of the minimal amount of time[, specifically the seven days] that [the inmate's]

dietary . . . restrictions were put in place, . . . as a matter of law, . . . his confinement was not

sufficiently atypical to implicate a protected liberty interest").  Further, directing the payment

of restitution after a disciplinary proceeding, does not amount to "cruel and unusual

punishment."  *See Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993); *see also Hudson v.

O'Brien*, 2010 WL 2900529, at *1 (D. Mass. July 21, 2010) (no liberty interest in restitution).

      **b.**    **Procedural Due Process**

      In the context of a prison disciplinary hearing, inmates possess due process rights

under the Fourteenth Amendment, but "the full panoply of rights" due a defendant in a

criminal proceeding does not apply.  *Applewhite v. Sheahan*, No. 08-CV-6045, 2013 WL

144957, at *10 (W.D.N.Y. Jan. 11, 2013) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556

(1974)). The Supreme Court enumerated certain procedural safeguards that must be

afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure

that the minimum requirements of procedural due process are satisfied.  *Wolff*, 418 U.S. at

539.  Specifically, with respect to a disciplinary hearing, the Fourteenth Amendment requires

that: (1) the inmate receive at least twenty-four hours written notice of the disciplinary

13

charges against him; (2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals"; (3) the inmate be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken.  *Id*. at 563-66.

Plaintiff contends that Haug, the hearing officer, did not provide plaintiff "with assistance" and refused to provide requested documents or allow plaintiff to call witnesses. *See* Compl. at 31-32.  The exhibits annexed to plaintiff's complaint belie his claims.  A report from the hearing indicates that "Inmate Robinson" was called as a witness to testify.  *See* Dkt. No. 1-1 at 14.  Plaintiff does not specify how he was denied "assistance" or what documents were withheld.   The complaint contains nothing more than vague and non-specific statements that fail to set forth a constitutional violation.  *See Murray v. Michael*, No. 9:03-CV-1434, 2005 WL 2204985, at *17 (N.D.N.Y. Sept. 7, 2005) (the plaintiff alleged "due process" violations but did not allege how he was denied due process).

Based upon the aforementioned, plaintiff's Fourteenth Amendment due process claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[7]

## E.    Eighth Amendment Conditions of Confinement

---

[7] To the extent that plaintiff attempts to assert a due process claim based upon his SHU confinement, that claim is subject to dismissal.  Plaintiff inarticulately states that he received a "severe" fifteen-year sentence in the SHU, of which, he had served five years.  *See* Compl. at 40.  Plaintiff argues that the sentence presented a "significant hardship" and violated his rights to due process.  *See id.*  However, the complaint lacks any facts establishing why plaintiff received the fifteen-year sentence, when the sentence was imposed, or whether it was the result of a disciplinary hearing.  Plaintiff's bare allegations are insufficient to state a claim for a violation of due process.

Plaintiff alleges that he suffered from unusual hardship while confined in the SHU.

Specifically, plaintiff claims he was confined to his cell for twenty-three hours a day, seven

days a week; had no access to exercise equipment; was not provided with "a rule book"; and

endured yelling from other inmates.  *See* Compl. at 36-37.  It is well-established that

segregated confinement is not, in and of itself, a cruel and unusual punishment.  *Hutto v.*

*Finney*, 437 U.S. 678, 686 (1978).  "Courts have consistently and repeatedly held that

segregated confinement in special housing units, keeplock confinement, and the like, does

not ordinarily violate the Eighth Amendment . . . In the absence of facts suggesting extremely

harsh and unusual conditions of confinement, a period of segregated confinement will not

give rise to an Eighth Amendment claim."  *Diggs v. Marikah*, No. 11-CV-6382, 2013 WL

227728, at *4 (S.D.N.Y. Jan. 22, 2013) (citations omitted); *see Guarneri v. Wood*, No.

08-CV-0792 (TJM/DRH), 2011 WL 4592209, at *12 (N.D.N.Y. Sept. 2, 2011) (citing *Coleman*

*v. Beale*, No. 07-CV-6219, 636 F.Supp.2d 207, 212 (W.D.N.Y. July 8, 2009) (finding no

Eighth Amendment cause of action where inmate "has not alleged or presented any facts

showing that his conditions of confinement in SHU were particularly severe, or that they

jeopardized his health or safety . . .") (internal quotation marks and citations omitted)).  The

Second Circuit has held that in order for a plaintiff to demonstrate that the conditions of his

confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an

objective test and a subjective test:

> First, the plaintiff must demonstrate that the conditions of his
> confinement result in unquestioned and serious deprivations of
> basic human needs. Second, the plaintiff must demonstrate
> that the defendants imposed those conditions with deliberate
> indifference.

*McAllister v. Garrett*, No. 10-CIV-3828, 2011 WL 3875423, at *10-11 (S.D.N.Y. Sept. 1, 2011) (citing *Welch v. Bartlett*, 125 F. App'x 340, 342 (2d Cir. 2005)).

Here, plaintiff does not allege that he suffered from a deprivation of any basic human need. Essentially, plaintiff takes issue with the normal conditions of SHU confinement. Courts in this Circuit have consistently held that such claims fail to state a constitutional cause of action. *See Sealey v. Giltner*, 197 F.3d 578, 581 (2d Cir.1999) (valid conditions for confinement include situations where the "inmate is confined to his cell 23 hours per day, can take no more than three showers per week, has limited library privileges and no telephone privileges"); *see also Shannon v. Venettozzi*, No. 13 Civ. 4530, 2015 WL 114179, at *9 (S.D.N.Y. Jan. 8, 2015) (allegation that inmate was denied access to special events and programs, restricted to cell for twenty-three hours per day, denied phone privileges and suffered mental anguish and stress were insufficient to suggest a claim for unconstitutional confinement) (citations omitted). Moreover, the allegation that the lack of a rule book violates New York State Correction Law § 138, *see* Compl. at 24, does not state a cognizable claim under section 1983. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) (Suddaby, J.) (collecting cases) ("A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983"). Accordingly, plaintiff's Eighth Amendment condition of confinement claims are dismissed in their entirety pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**F.    Supervisory Claims**

It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright*

*v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability. *See Pettus v. Morgenthau*, 554 F.3d

17

293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights").  Moreover, "conclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient to allege involvement of a supervisor.  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).  A complaint that essentially regurgitates the relevant "personal involvement" standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal.  *Id.*

Plaintiff's allegations against the supervisory defendants are nothing more than legal conclusions, unsupported by any facts.  Moreover, "[a]bsent an underlying constitutional violation, there can be no supervisory liability."  *See Murray v. Pataki*, No. 9:03-CV-1263 (LEK/RFT), 2007 WL 956941, at *7 (N.D.N.Y. Mar. 29, 2007) ("Plaintiff has failed to establish that Goord was grossly negligent in his supervision of unknown subordinates, especially since no constitutional violation arose from this incident.").  Here, having failed to sufficiently plead an underlying constitutional violation, plaintiff's claims against the supervisory defendants fail to state a claim upon which relief may be granted.  *See Elek v. Inc. Vill. of Monroe*, No. 08-CV-8928, 815 F.Supp.2d 801, 808 (S.D.N.Y. Sept. 27, 2011) (collecting cases for the proposition that "because plaintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability").  Thus, plaintiff's claims against defendants Fischer, Selsky, Annucci, Rock, Uhler, Zerniak, D. Quinn, Otis, and Lira are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for

18

failure to state a claim upon which relief may be granted.[8]

## G.    Remaining Defendants

Plaintiff names and identifies the following individuals as defendants:  Reginald Bishop ("Bishop"), Matthew Kelsh ("Kelsh"), Ralph J. Isabella ("Isabella"), Matthew Ranieri ("Ranieri"), Thomas G. Lumbard ("Lumbard"), Brian Kourofsky ("Kourofsky"), Scott Santamore ("Santamore"), Jeffery Clemo ("Clemo"), Michael A. Carr ("Carr"), Darrin Corrigeux ("Corrigeux"), Royce Corbine ("Corbine"), Adam J. Gallagher ("Gallagher"), John J. Finazzo ("Finazzo") and Betsey S. Mitchell-Oddey ("Mitchell-Oddey").  Despite identifying these individuals in the introductory paragraph, the complaint is devoid of any factual allegations of wrongdoing by any of the aforementioned defendants demonstrating that the individuals were personally involved in any constitutional deprivation.  *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (since the defendant is nowhere mentioned or referenced in the body of the amended complaint, the plaintiff has not adequately pled his personal involvement in any of the constitutional deprivations alleged in the amended complaint).  To the extent that plaintiff attempts to

---

[8] Plaintiff makes several references to the existence of a municipal policy as a basis for imposing liability on defendants.  While a plaintiff may establish the liability of a municipality for violation of civil or constitutional rights by showing that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]," *Zappala v. Albicelli*, 980 F. Supp. 635, 639 (N.D.N.Y. 1997) (Scullin, J.) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 689 (1978)) (other citations omitted), there are no municipal Defendants named in the complaint.  Each defendant is identified as an employee of New York State, and *Monell* provides no basis for imposing liability on them.  *See, e.g., Fox v. Poole*, No. 06-CV-148, 2008 WL 1867939, at *7 (W.D.N.Y. Apr. 24, 2008) ("*Monell* involved municipal liability under § 1983 and whether the municipality is the 'person' under that statute, and is not applicable" to a case involving only state defendants.).

assert personal involvement against these defendants by collectively referring to "defendants" as a group, such generalized allegations are insufficient to state a claim against an individual defendant.  *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). Thus, plaintiff's claims against these defendants are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### III.    CONCLUSION

**ORDERED** that plaintiff's claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; it is further

**ORDERED**, that if plaintiff wishes to proceed with this action he must file an amended complaint within thirty (30) days of the filing date of this Decision and Order as set forth above; and it is further

**ORDERED** that upon the filing of an amended complaint as directed above, the Clerk shall return the file to the Court for further review; and it is further

**ORDERED** that, in the event plaintiff fails to file a signed amended complaint within thirty (30) days of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action pursuant to 28 U.S.C. § 1915A(b) due to plaintiff's failure to state a claim upon which relief may be granted and to comply with the terms of this Decision and Order, without further order of this Court; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

April 13, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court